## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ELDERIC JOHN PHILIP,**  
  **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO. 13-5328**

**HORNBECK OFFSHORE SERVICES, L.L.C., ET AL.,**  
  **Defendants**

**SECTION: "E" (2)**

## ORDER AND REASONS

### ISSUES PRESENTED

1. Whether there is a genuine issue of material fact regarding Plaintiff's status as a Jones Act seaman
2. Whether there is a genuine issue of material fact regarding Plaintiff's status as a borrowed employee of Defendant Hornbeck Offshore Services, L.L.C.
3. Whether there is a genuine issue of material fact regarding Plaintiff's vessel negligence and general maritime negligence claims
4. Whether Plaintiff is entitled to a jury trial

### BACKGROUND

This is a maritime personal injury case. Plaintiff Elderic Philip, a rigger working for Defendant Longnecker Properties, Inc. ("Longnecker"), was working aboard the motor vessel Silverstar on June 30, 2013, when he allegedly tripped on a wooden board on the vessel's deck and fell.[1] Defendant Hornbeck Offshore Services, LLC ("Hornbeck") owns the Silverstar,[2] which was chartered by Defendant Eni U.S. Operating Co. Inc. ("Eni") at the time of the incident.[3]

Philip filed this suit on August 8, 2013, asserting claims under the Jones Act[4] and for maintenance and cure, unseaworthiness, vessel negligence under the Longshore and

---

[1] See R. Doc. 1 at ¶ V; R. Doc. 19 at ¶ III; R. Doc. 39 at 2.  
[2] See R. Doc. 49-15 at 2.  
[3] See R. Doc. 46-1 at 7; R. Doc. 49 at 2.  
[4] 46 U.S.C. § 30104.

Harbor Workers' Compensation Act ("LHWCA"),[5] and general maritime law negligence.[6]

On September 22, 2014, Longnecker filed a motion for summary judgment.[7] Longnecker argues Philip is not a seaman under the Jones Act and that the undisputed facts demonstrate Longnecker was not negligent and Philip's injuries were caused solely by his own negligence.[8] Philip filed a response in opposition to Longnecker's motion on October 14, 2014,[9] and Longnecker filed a reply on October 20, 2014.[10]

On October 7, 2014, Hornbeck filed a motion for partial summary judgment that Philip is not a seaman as to Hornbeck and Philip is not Hornbeck's borrowed employee and seeks dismissal of Philip's Jones Act, maintenance and cure, and unseaworthiness claims.[11] Hornbeck also filed a motion for partial summary judgment seeking dismissal of Philip's claims for vessel negligence under the LHWCA and Philip's negligence claims against Hornbeck under general maritime law.[12] Philip filed responses in opposition to Hornbeck's motions on October 14, 2014.[13] Hornbeck filed a reply on October 20, 2014,[14] in support of its motion for partial summary judgment regarding Philip's seaman and borrowed-employee status. Hornbeck filed a reply on October 22, 2014,[15] in support of its motion for partial summary judgment regarding Philip's vessel negligence and general maritime law negligence claims.

---

[5] 33 U.S.C. § 905(b).
[6] *See* R. Doc. 1; R. Doc. 19.
[7] R. Doc. 39.
[8] *Id.*
[9] R. Doc. 48.
[10] R. Doc. 54.
[11] R. Doc. 46.
[12] R. Doc. 47.
[13] R. Doc. 49; R. Doc. 50.
[14] R. Doc. 56.
[15] R. Doc. 59.

On November 3, 2014, Hornbeck filed a motion to strike Philip's jury demand.[16] Hornbeck argues that because Philip is neither a seaman nor Hornbeck's borrowed employee, Philip's only remaining claims are admiralty claims for which jury trials are prohibited.[17] Philip filed his response in opposition to Hornbeck's motion to strike on November 10, 2014.[18]

On August 14, 2015, the Court ordered the parties to submit supplemental briefing with regard to Philip's seaman status.[19] Philip filed a supplemental memorandum on August 24, 2015,[20] and Longnecker[21] and Hornbeck[22] filed supplemental memoranda on August 31, 2015.

## ANALYSIS

### I.   Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer."[23] Defendants argue Philip cannot recover under the Jones Act because he is not a seaman. The Act does not define "seaman"; this "difficult—perhaps insurmountable—task" has been left to the courts.[24] Guidance from Congress and the

---

[16] R. Doc. 63.
[17] *Id.*
[18] R. Doc. 69.
[19] R. Doc. 105.
[20] R. Doc. 106.
[21] R. Doc. 107.
[22] R. Doc. 108.
[23] 46 U.S.C. § 30104.
[24] *See In re Endeavor Marine, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000); *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932 (5th Cir. 2014); *St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376, 378 (5th Cir. 2000).

courts indicates the inquiry is whether the injured plaintiff is a "master or member of a crew of any vessel."[25]

A.  Standard of Law

When considering a motion for summary judgment, the Court must view the evidence and any inferences drawn from the evidence in the light most favorable to the non-movant to determine whether there is a genuine issue of material fact and whether the movant is entitled to summary judgment as a matter of law.[26] Whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact.[27] Because statutory terms are at issue, their interpretation is a question of law, and it is the Court's duty to define the appropriate standard.[28]

"The Jones Act is remedial legislation and as such should be liberally construed in favor of injured seamen."[29] Nevertheless, summary judgment is proper where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[30] If reasonable persons could draw conflicting inferences, it is a question for the jury and summary judgment must be denied.[31] "[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal."[32] Thus, summary judgment on seaman status in Jones Act cases is rarely proper.[33]

---

[25] *See Naquin*, 744 F.3d 927, 932 (5th Cir. 2014); *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 374 (5th Cir. 2001).
[26] *See Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 309 (5th Cir. 1984).
[27] *See St. Romain*, 203 F.3d at 378.
[28] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995).
[29] *Guidry v. South La. Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir. 1980).
[30] *Id. See also Ellender v. Kiva Const. & Engineering, Inc.*, 909 F.2d 803, 805–06 (5th Cir. 1990); *Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350, 352 (5th Cir. 1982).
[31] *See Buras*, 736 F.2d at 309; *Chandris*, 515 U.S. at 369.
[32] *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir. 1984).
[33] *See Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983).

B. <u>Discussion</u>

Despite some guidance from Congress and the courts, drawing a distinction between seamen and non-seamen has proved difficult for courts. As the Supreme Court has explained, "We have made a labyrinth and got lost in it. We must find our way out."[34]

In *Chandris, Inc. v. Latsis*, the Supreme Court explained that, to qualify as a Jones Act seaman, a maritime employee must have a "substantial employment-related connection to a vessel *in navigation*."[35] The Court developed a two-pronged analysis to guide the determination of seaman status.[36] First, the employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission."[37] Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[38]

The parties do not dispute that Philip meets the first prong of the *Chandris* test.[39] Therefore, whether Philip qualifies as a seaman under the Jones Act turns on whether he has a connection to a vessel or group of vessels in navigation that is substantial in terms of both duration and nature.

1. *Duration*

With regard to the second prong, *Chandris* recognized the Fifth Circuit's threshold for a substantial durational connection to a fleet of vessels: "Generally, the

---

[34] *Chandris*, 515 U.S. at 356 (quoting *Johnson v. John F. Beasley Constr. Co.*, 742 F.2d 1054, 1060 (7th Cir. 1984)).
[35] *Id.* at 373 (emphasis in original).
[36] *See id.* at 368–69.
[37] *Id.* at 368 (quoting *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).
[38] *Id.*
[39] *See* R. Doc. 46-1 at 16; R. Doc. 107 at 5; R. Doc. 39-1.

5

Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[40] The Fifth Circuit explained in *Roberts v. Cardinal Services, Inc.* that "[t]he 30 percent floor does not change when an 'identifiable group' of vessels in navigation is at issue, rather than just one vessel."[41]

Defendants rely on *Roberts* to argue Philip fails to satisfy the durational component of the second prong of the *Chandris* test.[42] The parties agree Philip has not spent at least 30 percent of his time aboard a single vessel or aboard a fleet of vessels owned by Longnecker.[43] Philip's Longnecker work history chart,[44] however, reflects that Philip has spent more than 46 percent of his time on vessels owned by Hornbeck.[45] Hornbeck and Longnecker argue that, to satisfy the durational element of the second *Chandris* prong, Philip must have spent at least 30 percent of his time on a fleet of vessels under the common ownership of his employer rather than on a fleet of vessels under the common ownership of a third party such as Hornbeck.[46] Philip, on the other

---

[40] *Chandris*, 515 U.S. at 371.

[41] *Roberts*, 266 F.3d at 375.

[42] *See* R. Doc. 107 at 1–2; R. Doc. 108 at 1–2.

[43] *See* R. Doc. 39-2 at ¶ 3; R. Doc. 48-4 at ¶ 3; R. Doc. 108 at 3.

[44] *See* R. Doc. 39-8; R. Doc. 49-10. In response to Plaintiff's request for production, Longnecker produced the chart reflecting Philip's work history from 2011 through 2013. R. Doc. 46-4 at ¶ 8. Longnecker attached the chart to its motion for summary judgment. R. Doc. 39-8. Philip also attaches the chart to his responses in opposition to both Longnecker's and Hornbeck's motions for summary judgment. *See* R. Doc 48-10; R. Doc. 49-10. Hornbeck does not dispute the accuracy of the chart. Indeed, Hornbeck cites to the chart in its reply in support of its motion for summary judgment to support its assertion that Philip worked on the Silverstar for "63 days out of the undisputed total of his 277 vessel working days with LPI." *See* R. Doc. 56 at 8. There is no genuine dispute that Philip spent at least 46 percent of his time on vessels owned by Hornbeck.

[45] Hornbeck also argues that Philip's time spent at home waiting for a call from Longnecker with his vessel assignment should be included in the calculation of Philip's time spent working on vessels. *See* R. Doc. 46-1 at 20–21. The Court finds this argument unpersuasive.

[46] *See* R. Doc. 107 at 11–12; R. Doc. 108 at 2.

hand, contends his employer need not be the owner or operator of the group of vessels on which he spent at least 30 percent of his time.[47]

The Fifth Circuit explained in several decisions prior to *Roberts* that, while a fleet of vessels must be under common ownership or control, it need not be under the common ownership or control of an injured plaintiff's employer for an injured plaintiff to qualify as a seaman. In *Bertrand v. International Mooring & Marine, Inc.*, the Fifth Circuit recognized the following:

> We have never held that a seaman is barred from coverage under the Jones Act if the employer neither owns nor controls the several vessels upon which the seaman works. . . . To require common ownership or control when seamen work on several vessels but not when they work on a single vessel is inconsistent with the liberal construction of the Jones Act that has characterized it from the beginning and is inconsistent with its purposes.[48]

Further, in *Coats v. Penrod Drilling Corp.*, the Fifth Circuit explained, "[W]e have decided that the employer need not be the owner or operator of the group of vessels."[49]

In *Roberts*, the Fifth Circuit referred to the "well-established rule . . . that a worker who fails to show that at least 30 percent of his time is spent on vessels under the common ownership or control of his employer is precluded from recovering as a seaman under the Jones Act."[50] The court explained as follows:

> [W]hen a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control. As recently as *Hufnagel*, we reaffirmed our commitment to this application of the 30 percent test, and we do so yet again today.[51]

---

[47] R. Doc. 106 at 3–4. In addition, Philip argues that because he spent more than 30 percent of his time on vessels time-chartered by Eni, those vessels constitute a fleet for purposes of conferring Jones Act seaman status on Philip. *See* R. Doc. 106 at 7–9. No Fifth Circuit case, however, supports Philip's argument that vessels time-chartered by the same entity constitute a fleet under the Jones Act.

[48] *Bertrand v. Int. Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir. 1983).

[49] *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 890 (5th Cir. 1993).

[50] *Roberts*, 266 F.3d at 378.

[51] *Id.* at 377.

The *Roberts* decision cited *Hufnagel v. Omega Services Industries, Inc.*[52] for the continued viability of the 30-percent rule, but Defendants rely on *Roberts*, which relied on *Hufnagel*, to establish that the fleet on which Philip spent at least 30 percent of his time had to be owned or controlled by his employer for him to qualify as a seaman.[53] The Fifth Circuit in *Hufnagel* was not called upon to decide whether the group of vessels was required to be owned by the employer or, instead, could be owned by a third party. The Fifth Circuit found that Hufnagel could not establish a connection to any identifiable group or fleet of vessels because the vessels had been hired by various companies whose only connection was that they had contracted with the same third party.[54] Because there was no fleet, the court did not reach the question of whether common ownership of the fleet by a party other than the plaintiff's employer would suffice.[55] The Fifth Circuit's decision in *Hufnagel* is inapposite to the question now before this Court—whether the plaintiff's employer must own or operate the fleet of vessels on which the plaintiff spends at least 30 percent of his time.[56]

The Fifth Circuit panel in *Roberts* did not explicitly overrule the Circuit's prior decisions *Bertrand* and *Coats*. Indeed, it could not have, given the Circuit's well-established rule of orderliness, which prevents one panel of the court from overturning another panel's decision, even if the panel's interpretation of the law appears flawed, "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court."[57]

---

[52] *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340 (5th Cir. 1999).
[53] Defendants also rely on *Willis v. Furgo Chance, Inc.*, 278 F. App'x 443 (5th Cir. 2008), which is unpublished and without precedential value.
[54] *Id.* at 347–48.
[55] *See id.* at 348.
[56] *See id.* at 347–48.
[57] *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

After *Roberts*, other sections of this Court have consistently held that the plaintiff's employer need not own or operate the group of vessels for the employee to be a Jones Act seaman. In *Jenkins v. Aries Marine Corp.*, the Court concluded that *Roberts* did not impact *Bertrand* and *Coats* with respect to "long-standing Fifth Circuit jurisprudence holding that the employer need not be the owner or operator of the group of vessels."[58] The Court reiterated, "[F]or an employee who works on multiple vessels, it must be shown that 30% or more of his time was spent on vessels under ownership or control of ONE common entity."[59] In *Parker v. Jackup Boat Service, LLC*, another section of this Court also recognized that the employer need not be the owner or operator of the group of vessels.[60] Further, the Court in *Alex v. Wild Well Control, Inc.* explained, "There is no basis to find that a sea-based worker, on an identifiable fleet of vessels subject to common ownership or control, must work on vessels owned or controlled by the defendant-employer in order to qualify as a seaman."[61]

In line with other courts in this District that have addressed the issue, the Court finds that *Roberts* did not overrule Fifth Circuit decisions establishing that the employer need not be the owner or operator of the group of vessels for the plaintiff to qualify as a seaman. Instead, *Roberts* is limited to its facts, which are distinguishable from the facts in this case.[62] Roberts failed to meet the 30-percent threshold with regard to a single vessel or with respect to a fleet of vessels under common ownership. Roberts, an employee of defendant Cardinal, spent 27.77 percent of his time associated with

---

[58] *Jenkins v. Aries Marine Corp.*, 554 F. Supp. 2d 635, 641 (E.D. La. 2008).
[59] *Id.* at 640–41.
[60] *Parker v. Jackup Boat Service, LLC*, 542 F. Supp. 2d 481, 491 (E.D. La. 2008).
[61] *Alex v. Wild Well Control, Inc.*, 2009 WL 1507359, at *5 (E.D. La. May 28, 2009).
[62] *Chandris*, 515 U.S. at 373 (describing the seaman status inquiry as a "fact-intensive question").

Cardinal vessels.[63] The Fifth Circuit noted that Roberts' time associated with Cardinal vessels fell short of the 30-percent guideline.[64] Roberts argued that the 13.54 percent of his time he spent on third-party vessels should be added to his time spent on Cardinal vessels, but the court declined to include his time on vessels owned by third parties.[65] The court recognized that the plaintiff could not add time on employer-owned vessels to time on third party-owned vessels to satisfy the 30-percent rule and thus reiterated that the group of vessels must be under *common* ownership or control. The Fifth Circuit in *Roberts* did not directly confront the issue of whether the group of vessels had to be subject to the *employer's* common ownership or control, or could be subject to the common ownership or control of a third party, because Roberts failed to meet the 30-percent threshold under either scenario. In this case, the parties do not dispute that Philip has spent more than 30 percent of his time on a fleet of vessels under the common ownership of Hornbeck.[66] *Roberts* is therefore not controlling on this case.

The Fifth Circuit has held that, in the context of a single vessel, the employer need not be the owner or operator of the vessel on which the plaintiff spent at least 30 percent of his time for the plaintiff to be a Jones Act seaman.[67] As the Fifth Circuit reasoned, "To require common ownership or control when seamen work on several vessels but not when they work on a single vessel is inconsistent with the liberal construction of the Jones Act that has characterized it from the beginning and is

---

[63] *Roberts*, 266 F.3d at 377.

[64] *See id.* ("We acknowledge *Chandris*'s insistence that '[the 30 percent threshold] serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.' We recognize as well that if all of Roberts's time aboard Cardinal-owned vessels were to be counted, he would come quite close (27.7 percent) to meeting the 30 percent requirement. Nevertheless, we do not perceive the instant case to be one that justifies an exceptional departure from the 30 percent test.").

[65] *See id.*

[66] *See* R. Doc. 106 at 6; R. Doc. 49-10; R. Doc. 107 at 1; R. Doc. 108 at 13 n.24.

[67] *See Bertrand*, 700 F.2d at 245.

inconsistent with its purposes."[68] This Court finds no reason to require that the employer own or operate the *group of vessels* on which a plaintiff spends at least 30 percent of his time when the employer need not own or operate the *single vessel* on which a plaintiff spends at least 30 percent of his time. Therefore, Philip satisfies the temporal component of the *Chandris* framework's second prong.

  *2. Nature*

  To qualify as a Jones Act seaman, Philip also must have a connection to a vessel or group of vessels that is substantial in nature.[69] It is the employee's connection to the vessel and not his particular job that is determinative of seaman status.[70] The ultimate inquiry is whether the plaintiff "is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."[71] This inquiry is necessarily fact-specific, as it "will depend on the nature of the vessel and the employee's precise relationship to it."[72] The Fifth Circuit described the difficult task of assessing the substantiality of a plaintiff's connection to a vessel or fleet of vessels:

> We have stated that there is no bright-line test to be applied in determining the frequency and regularity of performance which must be shown to claim [seaman] status, but incidental and temporary duty will not suffice. It is clear, however, that our analysis must focus on the nature and location of the claimant's employment taken as a whole.[73]

  Defendants rely on the "randomness" and unpredictability of Philip's vessel assignments to establish that any connection Philip had to Hornbeck vessels was

---

[68] *Id.*

[69] *See Chandris*, 515 U.S. at 370 ("The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman. . . .").

[70] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 388 (5th Cir. 2003) (quoting *Chandris*, 515 U.S. at 364).

[71] *Chandris*, 515 U.S. at 370.

[72] *Id.* at 371 (quoting *Wilander*, 498 U.S. at 356).

[73] *Buras*, 736 F.2d at 310–11 (internal citations and quotation marks omitted).

sporadic and, as a result, not substantial in nature.[74] The Supreme Court noted in *Chandris* that "the relationship creating seaman status must be substantial in point of time and work, and not merely sporadic."[75] The Court explained its reasoning:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.[76]

The Court also explained that courts must weigh "the total circumstances of an individual's employment . . . to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon."[77]  The Court reasoned as follows:

> The principal formulations employed by the Courts of Appeals—"more or less permanent assignment" or "connection to a vessel that is substantial in terms of its duration and nature"—are simply different ways of getting at the same basic point: The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected.[78]

The Court must consider the totality of the circumstances of a plaintiff's employment to determine whether his connection to a vessel or fleet of vessels was sufficiently substantial in nature.[79] The jury "should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in

---

[74] *See, e.g.,* R. Doc. 107 at 6–7; R. Doc. 46-1 at 17–21.
[75] *Chandris*, 515 U.S. at 367.
[76] *Id.* at 368.
[77] *Id.* at 370 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)) (internal quotation marks omitted).
[78] *Id.* at 369–70 (internal quotation marks and citations omitted).
[79] *See id*; *Bertrand*, 700 F.2d at 246 ("[T]he issue of an injured worker's status as a seaman should be addressed with reference to the nature and location of his occupation taken as a whole."); *Buras*, 736 F.2d at 312 ("[W]e did not in *Bertrand* reject the 'totality of the circumstances' approach to the question of seaman status. Rather, we explicitly reiterated that the substantial work inquiry is dependent on the total circumstances of the claimant's employment. . . ."); *Prinzi v. Keydril Co.*, 738 F.2d 707, 711 (5th Cir. 1984) ("[W]e look to the totality of the circumstances of the claimant's employment to determine seaman status.").

navigation to qualify as a member of the vessel's crew, to consider *all relevant circumstances* bearing on [the two *Chandris* prongs]."[80]

It is undisputed that Philip was working as a rigger for Longnecker.[81] Philip testified that his work on Hornbeck vessels required that he remain aboard the vessels for the entirety of his assignment and eat and sleep on them.[82] Neither defendant disputes these facts. Nearly all of Philip's work was performed on a vessel at sea; he did not work onshore during his employment.[83] Philip generally met the vessel to which he was assigned at the dock or "[rode] out to the boat on an offshore location."[84] Philip testified in his deposition that he felt more attached to the Silverstar,[85] a Hornbeck vessel on which he spent more than 23 percent of his time.[86] Altogether, Philip spent more than 46 percent of his time on vessels owned by Hornbeck.[87]

In addition, there are disputed issues of material fact with respect to the nature of Philip's connection to the fleet of vessels owned by Hornbeck. For example, the parties dispute whether Philip was assigned vessel crew duties, such as cleaning, chipping paint, and tying vessel lines. Although Philip's duties were primarily rigging on the Silverstar cargo deck,[88] Philip testified at his deposition that, with respect to all vessels, he "used to help tie the boat up, chip paint, wash the boat down, help load groceries when it was grocery time[,] [h]elp put up the groceries, clean the coolers out[,] [s]weep, mop, take care of the galley, take care of . . . the bathrooms and the hallway, [and] [o]il the chains

---

[80] *Chandris*, 515 U.S. at 369 (emphasis added).
[81] *See* R. Doc. 39-1 at 2; R. Doc. 46-1 at 9; R. Doc. 49 at 1. *See Jenkins*, 554 F. Supp. 2d at 639–41 (concluding rigger was a Jones Act seaman).
[82] *See* Plaintiff's Deposition at 102–04. This is not refuted by Defendants.
[83] R. Doc. 106 at 2; R. Doc. 108 at 3. Longnecker does not dispute this and indeed provided Philip's work history chart, which reflects that 100 percent of his time working was spent on vessels. *See* R. Doc. 39-8.
[84] Plaintiff's Deposition at 203–04.
[85] Plaintiff's Deposition at 223.
[86] *See* R. Doc. 39-8.
[87] *See* R. Doc. 39-8; R. Doc. 49-10; R. Doc. 56 at 8 (citing R. Doc. 49-10).
[88] Plaintiff's Deposition at 131, 213–14.

down."[89] Philip acknowledged these duties were not regularly assigned to him[90] but testified that the Silverstar vessel crew, employed by Hornbeck, assigned Philip these tasks "at times."[91] Longnecker argues "these duties were incidental to his primary duties as a rigger and were assigned as busy work when there was no rigging work to perform."[92] Hornbeck disputes that Philip completed these crew tasks on Hornbeck vessels at all.[93] In *Keener v. Transworld Drilling Co.*, the Fifth Circuit found it relevant to the seaman status determination that the plaintiff painted and chipped paint aboard a vessel but concluded that there must be more than "one isolated occurrence" of such seaman duties to support a finding of seaman status.[94] Because Philip testified he completed vessel crew tasks "at times" and on more than one occasion, the factual determinations of whether and how often Hornbeck assigned such tasks to Philip is germane to the analysis of the nature of Philip's connection to the Hornbeck vessels.

As noted above, the determination of seaman status is a mixed question of law and fact,[95] and even marginal cases must go to the jury.[96] From these facts, both those that are undisputed and those that are in dispute, a reasonable jury could conclude that the totality of the circumstances surrounding Philip's employment establishes a connection to Hornbeck vessels that is substantial in nature.[97] In *Bertrand*, the Fifth

---

[89] Plaintiff's Deposition at 105. *See also* Plaintiff's Deposition at 215–17. Longnecker does not dispute that Philip completed these tasks on occasion. *See* R. Doc. 54 at 3.

[90] Plaintiff's Deposition at 223.

[91] Plaintiff's Deposition at 214–16.

[92] R. Doc. 54 at 3.

[93] *See* R. Doc. 56 at 2–3.

[94] *Keener v. Transworld Drilling Co.*, 468 F.2d 729, 731–32 (5th Cir. 1972).

[95] *See St. Romain*, 203 F.3d at 378.

[96] *White*, 736 F.2d at 305. *See also Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 835 (5th Cir. 1982) (concluding there was enough evidence of seaman status to go to the jury where plaintiff and defendant presented conflicting evidence regarding plaintiff's work on vessels, rendering it a "close case").

[97] *Cf. Bouvier*, 702 F.2d at 90–91 (finding that rigger was not a seaman as a matter of law in part because he was a shore-based worker who worked his shift "at the shipyard and then went home" and "never ate or slept on board a vessel and . . . never went to sea").

Circuit found that a reasonable jury could conclude that plaintiffs had a substantial connection to a fleet of vessels in part because 100 percent of the plaintiffs' time was spent performing vessel-related work, the plaintiffs' entire employment involved "preparing to work or working from a vessel," they ate and slept aboard the vessels, they went to sea, and the evidence could have given rise to the conclusion that the plaintiffs were "continuously subject to the perils of the sea . . . and were engaged in classical seaman's work."[98] The jury in this case should be allowed to make factual determinations with respect to the genuine issues of material fact raised by the parties and then to consider those facts, as well as the undisputed facts, to assess the totality of the circumstances surrounding Philip's employment. Based on the totality of those circumstances, a reasonable jury could find that Philip's connection to the Hornbeck vessels is substantial in nature and that, as a result, Philip is a Jones Act seaman.[99]

C. Conclusion

Summary judgment on seaman status is rarely proper.[100] The parties agree that Philip satisfies the first prong of the *Chandris* test. Philip satisfies the temporal component of the second prong, as he spent more than 30 percent of his time on a group of vessels under the common ownership of Hornbeck. Genuine issues of material fact exist, which will impact the analysis of the totality of the circumstances surrounding Philip's employment and whether Philip's connection to the Hornbeck vessels was substantial in nature. Accordingly, summary judgment on seaman status is improper.[101]

---

[98] *Bertrand*, 700 F.2d at 243, 247.
[99] *See Buras*, 736 F.2d at 309 ("Summary judgment is appropriate where the underlying facts are undisputed, *and* the record reveals no evidence from which reasonable persons might draw conflicting inferences from those facts." (emphasis added)).
[100] *See Bouvier*, 702 F.2d at 90.
[101] *See Buras*, 736 F.2d at 309; *Chandris*, 515 U.S. at 369.

## II.   Borrowed Employee

Hornbeck argues that Philip is not Hornbeck's borrowed employee and therefore cannot bring claims against Hornbeck under the Jones Act and for maintenance and cure.[102]

### A.  Standard of Law

The Jones Act confers upon a seaman the right to sue his employer for negligence resulting in his personal injury.[103] The Jones Act is applicable only if an employment relationship exists.[104] The borrowed employee doctrine is the "functional rule that places the risk of a worker's injury on his actual rather than his nominal employer."[105] Whether an injured plaintiff is a borrowed employee is a matter of law for the district court to decide, though some cases involve factual disputes that must be resolved by the fact-finder before the court can make its legal determination.[106]

In ruling on a motion for summary judgment, the Court "must indulge every *reasonable* inference from those facts in favor of the party opposing the motion."[107] For summary judgment to be proper, the facts must point so overwhelmingly in favor of one party that the Court believes a reasonable fact-finder could not reach a contrary verdict.[108]

---

[102] R. Doc. 46-1 at 21–28.
[103] *See* 46 U.S.C. § 30104.
[104] *See id.*
[105] *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 178 (5th Cir. 1981).
[106] *See Delahoussaye v. Performance Energy Services, L.L.C.*, 734 F.3d 389, 393 (5th Cir. 2013); *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 677 (5th Cir. 1993).
[107] *Hall v. Diamond M Co.*, 732 F.2d 1246, 1249–50 (5th Cir. 1984) (emphasis in original) (internal quotation marks and citation omitted).
[108] *Id.* at 1250.

When determining whether a person qualifies as a borrowed employee, courts should consider the following nine factors[109]:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
(2) Whose work is being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?

While the critical factor is control, no single factor or combination of factors is determinative.[110]

B. _Discussion_

1. _Control_

The first factor requires a court to distinguish "between authoritative direction and control, and mere suggestion as to details . . . where the work furnished is part of a larger undertaking."[111] To establish control, there must have been a "significant supervisory role" over Philip's work.[112]

The rigging duties aboard the Silverstar were the responsibility of Longnecker employees exclusively.[113] Longnecker riggers worked with Eni crane operators and Eni land workers to load and unload cargo from the vessels.[114] While the captain, a Hornbeck employee, told the workers where he wanted the cargo placed "for stability of

---

[109] _Brown_, 984 F.2d at 676 (citing _Ruiz v. Shell Oil Co._, 413 F.2d 310 (5th Cir. 1969)); _Melancon v. Amoco Prod. Co._, 834 F.2d 1238, 1244 (5th Cir. 1988), _reh'g granted on other grounds_, 841 F.2d 572 (5th Cir. 1988).

[110] _See Brown_, 984 F.2d at 676.

[111] _Ruiz_, 413 F.2d at 313 (quoting _Standard Oil Co. v. Anderson_, 212 U.S. 215, 222 (1909)).

[112] _See Ancelet v. National R.R. Passenger Corp._, 913 F. Supp. 968, 971 (E.D. La. 1995) (citing _Lindsey v. Louisville & Nashville Railroad Co._, 775 F.2d 1322, 1324 (5th Cir. 1985)).

[113] _See_ Plaintiff's Deposition at 214–15. Hornbeck does not dispute this. _See_ R. Doc. 56 at 4–5.

[114] Plaintiff's Deposition at 88–93.

the vessel," to ensure the vessel would not flip over, the captain was not involved with the operation of the crane or the lifting of the cargo.[115] Captain Kyle Kennedy testified that his job was to "oversee the cargo operation": "If we felt that we didn't want a piece of cargo lifted or we required the cargo lifted in a different way, we could inform them, and we could have a discussion with the lead rigger on the back deck. Generally speaking, they handled their—they knew their business."[116]

Longnecker gave Philip his assignments.[117] Philip reported to a lead rigger employed by Longnecker with updates, questions about the work, or problems on the boats.[118] Philip testified that "he would be assigned by [Hornbeck]" to complete tasks such as mopping, chipping paint, washing the vessel, and loading and stocking groceries, and tying vessel lines.[119]  He also said he tied the lines "maybe about two or three times"[120] in addition to a few times when the vessel crew was shorthanded, acknowledging it was "[s]omewhat rare."[121] Philip testified he "did not expect to regularly have to perform duties that were normally assigned to the vessel's crew."[122] Even if Philip's testimony about chipping paint, tying lines, and unloading groceries is accepted as true, these facts would not be sufficient to establish that Hornbeck exercised

---

[115] Plaintiff's Deposition at 89. *See also* R. Doc. 46-2 at ¶ 6.

[116] R. Doc. 46-10 (Deposition of Kyle Kennedy) at 11.

[117] Plaintiff's Deposition at 235. *See also* R. Doc. 46-2 at ¶ 6.

[118] R. Doc. 46-7 at ¶ 9; Plaintiff's Deposition at 126. *See also* R. Doc. 46-9 at 6–7; R. Doc. 46-10 at 10; R. Doc. 46-2 at ¶ 6. *Cf. Melancon*, 834 F.2d at 1245 (finding that issue of control favored borrowed employee status when plaintiff's employer gave no instructions to plaintiff except to "go to the field and perform the work requested by [borrowed employee]" and that plaintiff took orders "only from [borrowed employee] personnel who told him what work to do and when and where to do it").

[119] R. Doc. 49 at 4; Plaintiff's Deposition at 214–16.

[120] Plaintiff's Deposition at 222.

[121] Plaintiff's Deposition at 220.

[122] Plaintiff's Deposition at 228.

control over Philip. Cooperation, global oversight, and consultation—as opposed to subordination—are insufficient to create a borrowed employee relationship.[123]

As a result, Hornbeck did not have sufficient control over Philip to support a finding of borrowed employee status.[124] This factor weighs against a finding of borrowed employee status.

### 2. *Work*

Courts look to whether there was a contractual agreement when determining whose work the plaintiff was doing when injured.[125] Philip was allegedly injured on the Silverstar, a vessel owned and operated by Hornbeck and chartered by Eni.[126] Hornbeck argues that on the day of Philip's alleged injury, he was working on the Silverstar pursuant to a master service agreement between Longnecker and Eni.[127] Hornbeck provides the agreement[128] and a declaration from Longnecker's president in which the president states Philip was present on the Silverstar pursuant to a work order under the Longnecker-Eni master service agreement and not pursuant to any contractual agreement between Longnecker and Hornbeck.[129] In Philip's response in opposition to Hornbeck's motion for summary judgment, Philip points to a 2006 master service agreement between Hornbeck and Longnecker but fails to provide any competent summary judgment evidence establishing that the Hornbeck-Longnecker master service agreement related to the work Philip was doing on the day he was allegedly injured.

---

[123] *Ruiz*, 413 F.2d at 313; *Ancelet*, 913 F. Supp. at 971.
[124] *Compare Butcher v. Superior Offshore Intern. LLC*, 754 F. Supp. 2d 829, 835–37 (E.D. La. 2010) *with Melancon*, 834 F.2d at 1245.
[125] *See Ancelet*, 913 F. Supp. at 974; *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 2014 WL 5113322, at *10 (E.D. La. Oct. 10, 2014); *Brown v. Ocean Marine Contractors, Inc.*, 2008 WL 4868080, at *5 (W.D. La. Nov. 6, 2008).
[126] *See* R. Doc. 46-2 at ¶ 3; R. Doc. 49-4 at ¶ 3.
[127] *See* R. Doc. 46-2 at ¶ 1.
[128] R. Doc. 46-11.
[129] R. Doc. 46-4 at ¶ 4, 5.

Therefore, there is no material factual dispute that the relevant agreement was between Longnecker and Eni. Accordingly, the Court finds Philip was performing Eni's and Longnecker's work and not the work of Hornbeck. This factor weighs against a finding of borrowed employee status.

### 3. Agreement

This factor asks whether there was an agreement between the original and borrowing employer.[130] Philip did not present competent summary judgment evidence that there was an agreement between Longnecker and Hornbeck with regard to Philip's work. Therefore, this factor weighs against a finding of borrowed employee status.[131]

### 4. Acquiescence

This factor "focuses on whether the employee was aware of his work conditions and chose to continue working in them."[132] Although Philip did not work on Hornbeck vessels consecutively, Philip worked, ate, and slept[133] on Hornbeck vessels for a total of 130 days prior to his accident.[134] This is a sufficient period of time for Philip to appreciate his new work conditions.[135] This factor weighs in favor of borrowed employee status.

### 5. Termination of Original Employer

"The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs."[136] It is undisputed that Longnecker never terminated its relationship with Philip; Philip

---

[130] *Butcher*, 754 F. Supp. 2d at 837.

[131] *See id.* at 836 (explaining that although the provisions of a master service agreement are not dispositive, "they are persuasive expressions of the parties' intent").

[132] *Wood v. Meridian Oil Production Inc.*, 199 F.3d 437, 437 (5th Cir. 1999) (per curiam).

[133] *See* Plaintiff's Deposition at 102–04.

[134] R. Doc. 39-8.

[135] *See Brown*, 984 F.2d at 678 (finding one month of time working, sleeping, and eating in borrowed employee's field sufficient amount of time for the plaintiff to appreciate his new work conditions).

[136] *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986).

remained an employee of Longnecker at all relevant times.[137] Longnecker determined on which vessel Philip would work at any given time, and Philip worked on Hornbeck vessels, including the Silverstar, only when instructed to do so by Longnecker.[138] Philip reported to a lead rigger employed by Longnecker with updates, questions about the work, or problems on the boats.[139] Longnecker never relinquished its control over Philip. Therefore, this factor weighs against a finding of borrowed employee status.[140]

### 6.  Tools and Place of Performance

This factor inquires into which party provided the tools and place of performance.[141] Hornbeck did not supply Philip's rigging equipment.[142] As a rigger, Philip would load or off-load the vessel at an Eni dock, regardless of which company owned the vessel.[143] It is undisputed that Philip wore a Longnecker uniform and a Longnecker hardhat.[144] Nevertheless, the injury occurred on the Silverstar, a vessel owned by Hornbeck. Philip slept and ate aboard the Hornbeck vessel for the entirety of his assignment.[145] Accordingly, on balance, this factor is neutral with respect to a finding.

---

[137] *See* R. Doc. 39-5; R. Doc. 46-1 at 25; R. Doc. 49 at 13.

[138] Plaintiff's Deposition at 223–25, 230–32; Plaintiff's Deposition at 197–98. *See also* R. Doc. 46-1 at 8–13.

[139] R. Doc. 46-7 at ¶ 9; Plaintiff's Deposition at 126. *See also* R. Doc. 46-9 at 6–7; R. Doc. 46-10 at 10.

[140] *See Robertson v. Blanchard Contractors, Inc.*, 2012 WL 6202988, at *12 (E.D. La. Dec. 12, 2012).

[141] *Butcher*, 754 F. Supp. 2d at 838.

[142] R. Doc. 46-10 at 11. Philip fails to provide evidence that raises a genuine issue of material fact with regard to whether Hornbeck supplied Philip's rigging equipment.

[143] Plaintiff's Deposition at 84–86. Hornbeck does not dispute this. *See* R. Doc. 46-1 at 25–26.

[144] Plaintiff's Deposition at 73, 189; R. Doc. 46-2 at ¶ 6.

[145] Plaintiff's Deposition at 101–04. Hornbeck raises no genuine issue of material fact with regard to whether Philip slept and ate aboard the vessels. *See, e.g.,* R. Doc. 56; R. Doc. 108.

### 7. *Length of Time*

Where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee, but the converse is not true.[146] While Philip was an employee of Longnecker, he spent about 23 percent of his time aboard the Silverstar and more than 46 percent of his time, or 130 of 277 days, on Hornbeck vessels.[147] It is unlikely that 130 non-consecutive days, out of 277 total days, is a "considerable length of time."[148] Therefore, this factor is neutral.

### 8. *Right to Discharge*

According to Hornbeck's claims manager, Hornbeck "had no right to discharge [Philip] from his direct employment."[149] No evidence suggests that Hornbeck had the right to terminate Philip's work relationship with Hornbeck.[150] Therefore, this factor weighs against a finding of borrowed employee status.

### 9. *Obligation to Pay*

The parties do not dispute that Longnecker alone had the obligation to pay Philip.[151] Thus, this factor weighs against a finding of borrowed employee status.

### C. Conclusion

Six factors weigh against a finding of borrowed employee status, one weighs in favor, and two are neutral. The six factors that weigh against a finding include the

---

[146] *Capps*, 784 F.2d at 618.

[147] *See* R. Doc. 39-8.

[148] *See, e.g., U.S. Fire Ins. Co. v. Miller*, 381 F.3d 385, 390 (5th Cir. 2004) (noting that it is "debatable whether approximately a year and a half is a 'considerable' length of time"). *But see Jackson v. Total E & P USA, Inc.*, 241 F. App'x 85, 87 (5th Cir. 2009) (unpublished) ("[T]his work situation continued for eight months, which we believe to be a considerable length of time.").

[149] R. Doc. 46-5 at ¶ 11.

[150] *See* R. Doc. 49-14; R. Doc. 49 at 13. Philip's only argument that Hornbeck may have had the right to terminate Philip is based on the master service agreement between Longnecker and Hornbeck, which is irrelevant.

[151] *See* R. Doc. 46-7 at ¶ 13; R. Doc. 46-4 at ¶ 7; R. Doc. 49 at 14 ("Plaintiff does not dispute that [Longnecker] alone had the obligation to pay Plaintiff.").

central factor of control and are sufficient to establish that Philip was not Hornbeck's borrowed employee as a matter of law.[152] Accordingly, Philip has failed to create a genuine issue of material fact as to whether Philip was Hornbeck's borrowed employee, and thus Hornbeck is entitled to summary judgment on that issue.

### III.    Vessel Negligence and General Maritime Negligence Claims

Hornbeck also moves for summary judgment on Philip's claims for vessel negligence[153] under the LHWCA and for negligence under the general maritime law.[154] Hornbeck argues these claims against Hornbeck are "entirely unsupported by the record."[155]

The LHWCA generally allows an injured worker to seek damages from third parties who may have caused the injury.[156] The LHWCA allows covered workers to pursue a tort action against the owner of a vessel for acts of vessel negligence.[157] A plaintiff bringing a claim of vessel negligence under the LHWCA must show he was injured as a result of the negligence of a vessel.[158]

Under the LHWCA, vessel owners owe three duties to longshoremen: (1) a turnover duty; (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel; and (3) a duty to intervene.[159] The turnover duty applies before operations begin and requires owners to exercise ordinary care to have the ship

---

[152] *See Butcher*, 754 F. Supp. 2d at 839.

[153] 33 U.S.C. § 905(b).

[154] R. Doc. 47.

[155] R. Doc. 47-1 at 7.

[156] *See Chenevert v. Travelers Indem. Co.*, 746 F.3d 581, 585 (5th Cir. 2014).

[157] *See Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 531 (5th Cir. 1991).

[158] *Ducrepont v. Baton Rouge Marine Enter., Inc.*, 877 F.2d 393, 395 (5th Cir. 1989). *See also Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1084–85 (5th Cir. 1987) ("[T]o be cognizable under § 905(b), a tort must occur on or in navigable waters . . . and there must be the traditional admiralty nexus. [I]n order for a waterborne structure to qualify as a 'vessel' under § 905(b), it must be a vessel for purposes of maritime jurisdiction. Such a vessel must be capable of navigation or its special purpose use on or in water.") (internal citations and quotation marks omitted).

[159] *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008).

and its equipment in a condition such that an expert and experienced stevedore, exercising reasonable care, would be able to carry on his cargo operations with reasonable safety.[160] This duty also requires the vessel owner to warn of any hidden dangers that could not be discovered with reasonable care.[161] Once operations have begun, the owner must take care to prevent unreasonable hazards under the owner's control.[162] The owner must also intervene with respect to obvious dangers "if [the owner] acquires actual knowledge that a condition of the vessel or its equipment poses an unreasonable risk of harm *and* if the vessel owner acquires knowledge that the stevedore is not exercising reasonable care to protect its employees."[163]

To prove negligence under the general maritime law, a plaintiff must establish the following: (1) the defendant owed the plaintiff a duty; (2) the duty was breached; (3) the plaintiff sustained injury; and (4) there is a causal connection between the defendant's conduct and the plaintiff's injury.[164]

As discussed above, summary judgment is appropriate when the record shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[165] Any evidence and inferences from the record are viewed in the light most favorable to the non-moving party.[166] If the movant produces evidence highlighting an absence of genuine issues of material fact, the non-movant must then

---

[160] *Levene*, 943 F.2d at 533 (citing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167 (1981)).

[161] *Levene*, 943 F.2d at 533.

[162] *See id.*; *Burchett v. Cargill, Inc.*, 48 F.3d 173, 179. *See also Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 403 (5th Cir. 2007) (noting that a vessel owner "may be liable under *Scindia's* active control duty if it actively involves itself in cargo operations *or* fails to protect contractors from hazards in areas under the active control of the vessel" (emphasis in original)).

[163] *Levene*, 943 F.2d at 533 (emphasis in original).

[164] *In re Nassau Bay Water Sports, Inc.*, 62 F.3d 397 (5th Cir. 1995) (per curiam).

[165] *See McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 288 (5th Cir. 2008); *Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 438 (5th Cir. 1991).

[166] *McLaurin*, 529 F.3d at 288.

come forward with evidence establishing genuine factual issues with respect to each of the challenged elements of its case for which it will bear the burden of proof at trial.[167]

The Court finds that there are genuine issues of material fact with respect to whether Hornbeck was negligent under the LHWCA and the general maritime law. For example, there is conflicting evidence in the record regarding the condition of the deck boards aboard the Silverstar, where Philip allegedly tripped.[168] There is also a dispute as to the location on the deck where Philip allegedly fell.[169] Therefore, summary judgment is improper.

### IV.    Jury Demand

Finally, Hornbeck moves to strike Philip's jury demand.[170] Hornbeck argues that, because Philip is neither a seaman nor a borrowed employee of Hornbeck, Philip has no Jones Act claims against Hornbeck as a matter of law.[171] Thus, Hornbeck contends the only remaining claims by Philip against Hornbeck are claims pursuant to LHWCA § 905(b) and the general maritime law, admiralty claims for which jury trials are prohibited.[172]

Jury trials are prohibited for claims that arise under admiralty law.[173] Consequently, if the Court had determined that Philip is not a Jones Act seaman as a

---

[167] *See generally Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

[168] *See, e.g.*, R. Doc. 50-11 (Deposition of Malcolm Parfait) at 2, 3–4 (noting he did not see anything in the area Philip allegedly fell that "might possibly constitute a trip hazard" or "that were so damaged that it might be a problem"); R. Doc. 50-7 (Deposition of Roy Bradshaw) at 2–3 (noting the deck boards were missing "chunks of . . . wood" and that pieces of board were missing and thus those areas needed to be flagged so the riggers knew "where to look out for").

[169] *See, e.g.*, R. Doc. 50-5 (Deposition of Daniel James Rhodes) at 5–6; R. Doc. 50-10 (Deposition of Jordan Stopyra) at 5–6; R. Doc. 50-11 (Deposition of Malcolm Parfait) at 3–4; Plaintiff's Deposition at 138–40. R. Doc. 50-7 (Deposition of Roy Bradshaw) at 5–8, 13.

[170] R. Doc. 63.

[171] *See* R. Doc. 63 at 1; R. Doc. 46.

[172] *See* R. Doc. 63 at 1. Philip does not dispute the fact that jury trials are prohibited for admiralty claims. *See* R. Doc. 69.

[173] *See, e.g.*, *Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005); *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1216 (5th Cir. 1986).

matter of law, Philip would not be entitled to a jury trial. Defendants failed to establish, however, that Philip is not a seaman as a matter of law, and Defendants' motions for summary judgment of Philip's Jones Act claims are denied.[174] The Jones Act provides injured seaman with the right to trial by jury.[175] Thus, Philip is entitled to a jury trial.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Longnecker's motion for summary judgment[176] is **DENIED**.

**IT IS FURTHER ORDERED** that Hornbeck's motion for partial summary judgment regarding Philip's seaman and borrowed employee status[177] is **GRANTED IN PART** and **DENIED IN PART**. For the reasons stated above, the Court finds Philip is not Hornbeck's borrowed employee as a matter of law.

**IT IS FURTHER ORDERED** that Hornbeck's motion for partial summary judgment regarding Philip's vessel negligence and general maritime negligence claims[178] is **DENIED**.

**IT IS FURTHER ORDERED** that Hornbeck's motion to strike jury demand[179] is **DENIED**.

**New Orleans, Louisiana, this 30th day of September, 2015.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[174] *See supra* Analysis, Part I.
[175] *See* 46 U.S.C. § 30104.
[176] R. Doc. 39.
[177] R. Doc. 46.
[178] R. Doc. 47.
[179] R. Doc. 63.